UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

Monica Webb, et al.,
            *Plaintiffs*,
              -v-
Aesthetic Physicians, P.C., et al.,
            *Defendants*.

Case No. 4:19-cv-02712-DDN

---

**MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS**

---

Defendants move for a complete dismissal under Rules 12(b)(6) and Rule 9(b); and, in the alternative, for dismissal of the claims of two plaintiffs under Rule 12(b)(2). As shown below, dismissal would not be proper.

## I.  Rule 12(b)(6) / Failure to State and MMPA Claim

Defendants seek dismissal with prejudice for failure to state a claim under the Missouri Merchandising Practices Act (the "MMPA"). To plead a violation of the MMPA, a plaintiff must plead that he or she (1) purchased merchandise (which includes services) from the defendant, (2) for personal, family, or household purposes, and (3) suffered an ascertainable loss of money or property, (4) as a result of an act declared unlawful by Mo. Rev. Stat. §407.020. *Cupit v. Dry Basement, Inc.*, 592 S.W.3d 417, 423 (Mo. Ct. App. 2020), citing *Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308, 311 (Mo. App. E.D. 2016).

Defendants do not challenge any of the elements  cited above. Instead, defendants complain that plaintiffs "do not allege any adverse effect from their surgeries" (Doc 49-1 at 5-6), and defendants assert that "a viable MMPA claim must include an allegation that the product performed in an unexpected and

unsatisfactory manner" (Doc 49-1 at 6-7). As shown below, plaintiffs are not required to make either of these allegations.

Plaintiffs' claims originate under section 407.025 of the MMPA, which requires an "ascertainable loss of money," not an adverse effect from surgery (a personal injury) or the unsatisfactory performance of a product (a product defect). A plaintiff adequately pleads the ascertainable loss element of an MMPA claim "if he alleges an ascertainable loss under the benefit-of-the-bargain rule, which compares the actual value of the item to the value of the item if it had been as represented at the time of the transaction." *Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308, 313 (Mo. Ct. App. 2016); *see also Plubell v. Merck & Co.*, 289 S.W.3d 707, 715 (Mo. Ct. App. 2009); *Sunset Pools of St. Louis, Inc. v. Schaefer*, 869 S.W.2d 883, 886 (Mo. Ct. App. 1994) (citing *Heberer v. Shell Oil Co.*, 744 S.W.2d 441, 443 (Mo. banc 1988)).

Plaintiffs have complied with the pleading rule set forth above:

> 44.  Plaintiffs and the Members of the Proposed Class purchased laser liposuction surgery from Sono Bello; Sono Bello falsely represented the surgery (as stated above) in violation of the MMPA; and as a result, Plaintiffs and the Members of the Proposed Class have suffered economic damages in that <u>the surgery they purchased was worth less than the surgery they thought they had purchased had the FDA-Approval Representation been true</u>.

(Doc 18 at ¶¶ 44, emphasis added). This is exactly what the Missouri case law requires.

As the Missouri Court of Appeals explained in *Murphy*:

A plaintiff adequately pleads this element of an MMPA claim if he alleges an ascertainable loss under the benefit-of-the-bargain rule, which compares the actual value of the item to the value of the item if it had been as represented at the time of the transaction. The rule is part of our standard instructions for damages in misrepresentation cases. See MAI 4.03. . . . Here, because Murphy alleged the mix was worth less than the product as represented, he stated an objectively ascertainable loss under the MMPA using the benefit-of-the-bargain rule. . . .Defendant has sought to take advantage of this growing market by labeling certain products as "all natural." By affixing such a label to the packaging of the Mix, Defendant is able to entice consumers like Plaintiff to pay a premium for [the supposed] "all natural" products. . . . These facts are sufficient at this juncture.

503 S.W.3d at 313–14 (citations omitted).

This court reached the same result in *Thornton v. Pinnacle Foods Grp. LLC*:

Under the benefit of the bargain rule as applied to MMPA claims, Plaintiff need only allege that the actual value of the product as purchased was less than the value of the product as represented to state a claim for an ascertainable loss. Here, Plaintiff alleges she paid a premium for the Mix due to the "Nothing Artificial" labeling and that her damages include the "difference between the actual value of the product and the value of the product if it had been as represented." Based on these allegations, which the Court accepts as true for purposes of the instant motion, the Court finds Plaintiff has alleged a plausible theory of damages. . . . It is not for the Court to determine on a motion to dismiss precisely what damages, if any, Plaintiff may be entitled to.

No. 4:16-CV-00158 JAR, 2016 WL 4073713, at *3–4 (E.D. Mo. Aug. 1, 2016)

(citations omitted).

Defendants' assertion that plaintiffs must plead an "adverse effect from their surgeries" is untrue. As explained in *Breeden v. Hueser*:

The damages claimed in Plaintiffs' petition are not based on the effect of Dr. Hueser's conduct on the body or health of his patients. Instead, they are economic damages resulting from the provision of a chemical that was of lesser value than what was billed to the client.

273 S.W.3d 1, 8 (Mo. Ct. App. 2008).

MMPA claims typically rest on purely economic harm. *See, e.g., Estate of Overbey v. Chad Franklin Nat'l Auto Sales N., LLC*, 361 S.W.3d 364, 373–74 (Mo. 2012) ("the harm caused was economic"); *Heckadon v. CFS Enterprises, Inc.*, 400 S.W.3d 372, 384 (Mo. Ct. App. 2013) ("the harm actually sustained by Respondents in this case was economic"). Moreover, the correct measure of damages in an MMPA case is at the time of the transaction. *Schoenlein v. Routt Homes*, Inc., 260 S.W.3d 852, 854–55 (Mo. Ct. App. 2008).

The caselaw that defendants cite includes only one MMPA case, which is an unreported opinion from *Mikhlin v. Johnson & Johnson*, No. 4:14-CV-881 RLW, 2014 WL 6084004, (E.D. Mo. Nov. 13, 2014). Notably, the *Mikhlin* opinion cites no MMPA precedent and adopts the reasoning of an unreported multi-district product liability case where the district court dismissed a series of common law fraud and negligent representation claims because, "Plaintiffs expressly decline to identify any specific statements about the products in question or any statements that any of them actually heard and relied upon." *In re Bisphenol-A (BPA) Polycarbonate Plastic Prod. Liab. Litig.*, 687 F. Supp. 2d 897, 905 (W.D. Mo. 2009).[1] The MMPA was enacted to supplement to the definition of common law

---

[1] Although various state consumer laws were pled in *Bisphenol-A*, the MMPA was not among them, and the court did not sustain any argument attacking the sufficiency of any of the consumer law claims, none of which involved the present question whether ascertainable damages were pled. 687 F. Supp. 2d at 908.

fraud and to eliminate the reliance element that caused the dismissal of the common law claims in *Bisphenol-A*. *See, e.g., Clement v. St. Charles Nissan, Inc.*, 103 S.W.3d 898, 899 (Mo.App.2003); *see also* 15 CSR 60–8.020(2).6. This makes the *Mikhlin* court's reliance on the common law *Bisphenol-A* opinion as support to dismiss an MMPA claim questionable. This court should not repeat that misplaced reliance.

In any event, this court, in this case, should not be persuaded by the logic of *Bisphenol-A*, which did not involve the MMPA, did not address any state-law consumer claims, and was decided based on common law theories that the MMPA was enacted to counteract. To be blunt, *Mikhlin* misstates Missouri MMPA law when it holds that a plaintiff must allege that a product failed to fulfill its originally anticipated function. *Mikhlin v. Johnson & Johnson*, No. 4:14-CV-881 RLW, 2014 WL 6084004, at *3 (E.D. Mo. Nov. 13, 2014).

For instance, in *Edmonds v. Hough*, the plaintiff paid $275 for a real estate appraisal necessary to obtain a mortgage loan, and based on the appraisal, she obtained the mortgage loan. 344 S.W.3d 219, 221 (Mo. Ct. App. 2011). In other words, the appraisal fulfilled its originally anticipated function (plaintiff got the loan). After plaintiff lost her home through for foreclosure, she sued the appraiser under the MMPA and lost that claim on summary judgment. The Missouri Court of Appeals reversed, holding that the plaintiff had an ascertainable loss of $275:

It is undisputed that Appellant purchased an appraisal from Respondents for personal purposes. It is also uncontroverted that Appellant paid $275 for the appraisal. This alone constitutes an ascertainable loss under the MPA.5 *See Clement*, 103 S.W.3d at 900 (loss in the form of lease payments); compare *Freeman Health System v. Wass*, 124 S.W.3d 504 (Mo.App. S.D.2004) (no loss where consumer never paid for merchandise). Additionally, Appellant presented evidence—particularly the market data report, HUD warning, and her expert's appraisal—giving rise to a genuine issue of material fact as to whether Respondents' appraisal was deceptive, fraudulent, misrepresentative, omitted material facts, or otherwise unlawful. As such, the trial court erred in granting Respondents summary judgment on Appellant's MPA claim.

344 S.W.3d at 223–24.

As explained by the Missouri Court of Appeals in *Clement v. St. Charles Nissan, Inc.*:

Once the court finds that a violation of the Act has occurred or is about to occur, irreparable harm and harm to the public are presumed. Due to the alleged violation of the Merchandising Practices Act, Clement states she has suffered damages in the form of her continued lease payments. Under our standard of review, Clement adequately pleaded a violation of the Merchandising Practices Act. . . . Clement's continued lease payments, or a portion thereof, could be considered damages. . . . It is true that this may make the amount of damages somewhat nebulous, but it does not necessarily remove the case from the category of compensable damages. . . Whether Clement can present evidence to show the amount of her damages is a question of fact to be tested by summary judgment or trial, not by a motion to dismiss.

103 S.W.3d 898, 900 (Mo. Ct. App. 2003) (citations omitted).

Under the *Mikhlin* rule, by analogy, a car dealer could omit to disclose a known risk of brake failure, sell the defective car at the price a reasonable consumer would pay for a car without risk of brake failure, but as long as the car fulfilled its originally anticipated function, the purchaser would have no MMPA

claim. To state an MMPA claim, the purchaser would have to allege an actual brake failure, and without one, her or she would have no ascertainable damages under the *Mikhlin* rule. That is not the enhanced consumer protection that the Missouri legislature intended when it enacted the MMPA.

In any event, *Mikhlin* is distinguishable because the plaintiffs purchased a product (baby powder) for an anticipated function (genital use) and later learned, after making full use of the product, that the anticipated function may have increased their risk of ovarian cancer, which none of them developed. In other words, there was an undisclosed risk from using the product as intended, but the product performed as intended without the risk actually coming to pass. Plaintiffs wanted to purchase baby powder for genital use, and that is what defendants sold them.

In the present case, the plaintiffs purchased a service (surgery) based on an affirmative false representation that the device used to perform the surgery was FDA approved. Each and every plaintiff then received surgery performed with a device that was not FDA approved. The risk at issue (lack of FDA approval) came to pass. Plaintiffs wanted to purchase surgery from an FDA-approved device, but that is not what defendants sold them.

Put another way, the *Mikhlin* bad act of omitting to tell the truth about cancer did not cause any plaintiff to actually develop cancer, but the Sono Bello bad act of affirmatively misrepresenting FDA approval caused every plaintiff to actually

have surgery with a non-FDA-approved device. So, in *Mikhlin* the material matter that was misrepresented (cancer) did not occur, but in the present case the material matter that was misrepresented (surgery with a non-FDA approved device) did occur. *Mikhlin* is different.

There is an opinion from this court more recent than *Mikhlin* that is more similar to the present case than *Mikhlin*. In *Snelling v. HSBC Card Servs., Inc.*, the plaintiff alleged that he was billed for a nonfunctioning printer in contravention of the defendant's own advertised anti-fraud policies. No. 4:14 CV 431 CDP, 2015 WL 3621091, at *8. Similarly, in the present case, plaintiffs allege that they were billed for surgery performed with a non-FDA-approved device in contravention of Sono Bello's own advertised "FDA-approved devices only" policy. This court held that the *Snelling* plaintiff sufficiently alleged monetary loss. *Id.* The present plaintiffs are the same.

The MMPA is broad in scope in order to prevent evasion by overly meticulous definitions; the determination of whether fair dealing has been violated turns on the unique facts and circumstances of each case. *Mattingly v. Medtronic, Inc.*, 466 F. Supp. 2d 1170, 1173 (E.D. Mo. 2006) (internal citations omitted). The weight of the caselaw, including all decisions from Missouri state courts interpreting the MMPA, and including a relatively recent opinion from this court, favors plaintiffs.

In summary, plaintiffs have pleaded an ascertainable loss under the benefit of the bargain rule in the manner required by all Missouri state courts that have

examined this element of the Missouri Merchandising Practice Act, including:

*Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308, 313 (Mo. Ct. App. 2016) ("because Murphy alleged the mix was worth less than the product as represented, he stated an objectively ascertainable loss under the MMPA using the benefit-of-the-bargain rule"); *Plubell v. Merck & Co.*, 289 S.W.3d 707, 715 (Mo. Ct. App. 2009) ("because Plaintiffs alleged Vioxx was worth less than the product as represented, they stated an objectively ascertainable loss under the MMPA using the benefit-of-the-bargain rule"); *Schoenlein v. Routt Homes, Inc.*, 260 S.W.3d 852, 855 (Mo. Ct. App. 2008) (MMPA damages are ascertainable as "the difference between the actual value of the property and the value if it had been as represented"); *Raster v. Ameristar Casinos, Inc.*, 280 S.W.3d 120, 124 (Mo. Ct. App. 2009) (casino gamblers suffered ascertainable loss under the MMPA where a casino changed its awards club rules, causing "loss" of cash-back comps and awards club card status). *See also* Doc 18, ¶¶ 42, 42, 44, 45, & 46.

## II.  Rule 9(b) / Particularity

(ii) Plaintiffs have met the Rule 9(b) pleading requirement. *See* Doc 18, ¶¶ 27 & 28. *See also* Doc 18, Exhibits D, E, F, G, H, & I, which each (i) contain the actual representation at issue, as it was made; (ii) is signed and dated by a plaintiff, who attests she read the representation; and (iii) is signed and dated by a Sono Bello physician, who attests he discussed the representation with the plaintiff. *See also* Claims 2-7 (Doc 18, pp. 16-21), which specifically allege: (i) the date of each

representation (first paragraph of each claim); the place of each representation (second paragraph of each claim); the content of each representation (second paragraph of each claim); and the dollar amount obtained/given based on each representation (third paragraph of each claim).[2]

Furthermore, the overarching principles of notice pleading dictate that a plaintiff does not need to plead fraud "with complete insight before discovery is complete." *Gunderson v. ADM Investor Servs., Inc.*, 230 F.3d 1363, at *3 (8th Cir.2000) (unpublished). Indeed, even the heightened pleading standards of Rule 9(b) do not require a plaintiff bereft of discovery to plead facts outside of his reasonable knowledge. *See Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 921 (8th Cir.2001). The information pleaded by plaintiffs is sufficiently particular for pleading purposes at the dismissal stage. *Cf. Snelling v. HSBC Card Servs., Inc.*, No. 4:14 CV 431 CDP, 2015 WL 3621091, at *7 (E.D. Mo. June 9, 2015)

### III.  Rule 12(b)(2) / Personal Jurisdiction

Defendants move to dismiss the claims of Lakecia Holloway and Tiawna Butts for lack of personal jurisdiction. The operative facts alleged in the complaint show that Holloway and Butts are Missouri residents who purchased laser liposuction surgery

---

[2] If the Court determines that Claim 8 fails under Rule 9(b) because Kim Thompson alleges that Sono Bello made the representation in a standardized form presented to her at Sono Bello St. Louis on December 14, 2015 but fails to attach a copy of the form identifying the physician who discussed the form with her, then Ms. Thompson requests additional time to file a motion for leave to amend her pleading to state that Dr. Richard Shatz was that physician.

at Sono Bello's Overland Park, Kansas location rather than the Creve Coeur, Missouri location used by the other plaintiffs. Defendants, haled into this jurisdiction by Webb, Jeffries, Cook, Ward, and Thompson, apparently prefer to be haled also into Kansas for a separate lawsuit by Holloway and Butts. As shown below, they are not entitled such treatment.

Plaintiffs need make only a prima facie case that personal jurisdiction exists. *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1431 (8th Cir.1995). The standard for finding personal jurisdiction over a nonresident defendant is that: (i) jurisdiction must be authorized by Missouri's long arm statute; and (ii) the defendant must have sufficient minimum contacts with the forum state to satisfy due process. *Downing v. Goldman Phipps, PLLC*, 764 F.3d 906, 911 (8th Cir. 2014).

## A. The Missouri Long Arm Statute

Missouri's long-arm statute authorizes personal jurisdiction over defendants who transact business within the state. *Viasystems, Inc. v. EBM–Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 (8th Cir.2011); *see also* Mo.Rev.Stat. § 506.500). In adopting the long-arm statute, the Missouri legislature intended to provide for jurisdiction, within the specific categories enumerated in the statutes (e.g., transacting business or making a contract within the state,) to the full extent permitted by the due process clause. *Darwin Chambers Co. L.L.C. v. Bennington Coll. Corp.*, No. 4:14-CV-1925 CAS, 2015 WL 1475009, at *2 (E.D. Mo. Mar. 31, 2015),

citing *K–V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 592 (8th Cir.2011). The Missouri Supreme Court has instructed that "transaction of any business" must be construed broadly. *State ex rel. Metal Serv. Ctr. of Ga., Inc., v. Gaertner*, 677 S.W.2d 325, 327 (Mo. Banc 1984).

Plaintiffs allege that defendants market and sell laser assisted liposuction surgery at an outpatient facility located in Creve Coeur, Missouri (Doc 18, ¶ 18), that defendants have used this facility to sell laser assisted liposuction in Missouri since at least December 24, 2013 (Doc 18, ¶ 21), and that it was at this Missouri location that defendants sold laser assisted liposuction to Monica Webb (Doc 18, ¶ 57), Jennifer Jeffries (Doc 18, ¶ 61), Terrikah Cook (Doc 18, ¶ 65), Yolanda Ward (Doc 18, ¶ 77), and Kim Thompson (Doc 18, ¶ 81). Defendants concede that 3% of their national sales are transacted at their Missouri location (Doc 25-1, ¶ 5). It is beyond dispute that the long-arm statute is satisfied.

## B. Minimum Contacts / Specific Jurisdiction

The Supreme Court has increasingly trained jurisdictional analysis on "specific jurisdiction," which concerns the relationship among the defendant, the forum, and the litigation. *Daimler AG v. Bauman*, 571 U.S. 117, 132–33, 134 S. Ct. 746, 758, 187 L. Ed. 2d 624 (2014). First, the relationship must arise out of contacts that the "defendant himself" created with the forum state. *Walden v. Fiore*, 571 U.S. 277, 284, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014). Second, the court should look to the defendant's contacts and conduct with the forum state itself, not the defendant's

contacts with persons who reside there. *Id.* at 285, 134 S.Ct. 1115 ("[A]lthough physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the State – either by the defendant in person or through an agent, goods, mail, or some other means – is certainly a relevant contact.").

With these considerations in mind, the court should apply the five-factor test that is used to assess minimum contacts, with the first three factors being of "primary importance": "(1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties." *Whaley v. Esebag*, 946 F.3d 447, 451–53 (8th Cir. 2020). The third factor speaks to the particular question of specific jurisdiction. *Id.* The fourth and fifth factors "carry less weight and are not dispositive." *Downing v. Goldman Phipps, PLLC*, 764 F.3d 906, 912 (8th Cir. 2014).

Turning to the present facts, first we find that the relationship between defendants and Missouri includes: (i) marketing and selling laser assisted liposuction at an outpatient medical facility located in Creve Coeur, Missouri ("Sono Bello St. Louis") (Doc 18 at ¶ 18 & 21); (ii) marketing laser assisted liposuction to Missouri residents using Sono Bello St. Louis and a second location located in Overland Park, Kansas ("Sono Bello Kansas City") (Doc 18 at ¶¶ 19-20); and using certain Internet websites to market laser liposuction to Missouri consumers (Doc 18 at ¶¶ 29-30). Each of these contacts is one that that the defendants themselves

created with Missouri. Furthermore, these are not contacts that are random, fortuitous, or attenuated, but rather they show defendants purposely availing themselves of the privilege of operating a surgical center in, and otherwise conducting business activities in, Missouri. The first factor weighs in favor of finding personal jurisdiction.

Second, we find that defendants' contacts with Missouri were numerous in that plaintiffs allege that more than 1,000 persons have purchased laser assisted liposuction from Sono Bello St. Louis (Doc 18 at ¶ 35). Because these sales are not are random, fortuitous, or attenuated contacts, the second factor weighs in favor of finding personal jurisdiction.

Third, we find that the challenged MMPA cause of action arises from marketing activity that defendants carry on at Sono Bello St. Louis, marketing laser assisted liposuction to Missouri residents including Holloway and Butts. Viewing the facts in a light favorable to the plaintiffs, defendants acted in furtherance of these MMPA violations by using Sono Bello St. Louis to market laser assisted liposuction to Missouri residents and by using Internet websites to market laser liposuction in Missouri. Moreover, the effects of defendants' conduct were felt by the plaintiffs in Missouri, where they reside. All of this occurred in the context of defendants' intention to establish a continuing marketing operation for laser liposuction in Missouri. Defendants' actions in and affecting Missouri are central to the plaintiffs' allegations of MMPA violations, and they support a finding of specific jurisdiction.

Fourth, "Missouri has expressed its clear intent to ensure that Missouri consumers can adjudicate chapter 407 claims [MMPA claims] in Missouri courts." *Andra v. Left Gate Prop. Holding*, Inc., 453 S.W.3d 216, 234 (Mo. 2015). This includes plaintiffs Holloway and Butts, who are Missouri consumers (Doc 18, ¶ 6).

Finally, given that the parties will be litigating five identical claims in this court, there is no reasonable argument that the convenience of the parties would be served by separating out Holloway and Butts to litigate the same issues in Kansas rather than joined in Missouri, where Holloway and Butts reside, where defendants have engaged local counsel, and where there is economy for all.

In closing, all five factors weigh in favor of personal jurisdiction.

## IV. Conclusion

For the foregoing reasons, the Motion to Dismiss should be denied. In the alternative, plaintiffs should be granted leave to make the specific amendments mentioned above.

Respectfully Submitted by:

BROWN LAW OFFICE

/s/ David G. Brown
David G. Brown Mo. Bar #42559
Brown Law Office
501 Fay St, Ste 201
Columbia, MO 65201
(573) 814-2375
dbrown@brown-lawoffice.com
*Attorney for Plaintiffs*
